## Commonwealth et al. v. City of Grayson.

March 17, 1939.

HUBERT MEREDITH, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellant.

JESSE K. LEWIS and J. J. LEARY for appellee.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

Highway 60 passes through the city of Grayson, a sixth-class city. In 1925, the State Highway Commission constructed a sixteen-foot concrete highway over this route in Carter County connecting at either end with streets of the city. No provision was made for the construction of the route through the city. During that year, the city itself entered into a contract for the construction of a street to connect at either end with the state highway. The specifications for this construction were the same as required by the State Highway Commission in the construction of Highway 60 in Carter County, but the street was paid for by the abutting property owners. By Section 2, Chapter 171, of the Acts of 1936, the legislature directed the State Highway Commission to ascertain the actual cost of construction of the route through the city and to certify its findings to the Auditor of Public Accounts who was directed to draw a warrant payable to the city for the sum so certified.

This action was filed by the appellee, City of Gray-

son, asking for a writ of mandamus to require the Department of Highways to certify to the Auditor the cost of the construction of the street (alleged to be $24,467.68) and to direct the Commissioner of Finance to approve and the Auditor to draw his warrant upon the Treasurer as directed by Section 2 of the Act. The trial court overruled a demurrer to the petition and the defendants, now appellants, then filed an answer to which a demurrer was sustained. Appellants declined to plead further and the trial court thereupon entered a judgment conforming to the prayer of the petition. This appeal followed.

By Section 59, Subsection 29, of the Constitution of Kentucky, the General Assembly is prohibited from passing special acts in any case where a general law can be made applicable. In 1928, the General Assembly undertook to deal with situations similar to that before us (Acts 1928, c. 178) by a general law authorizing the State Highway Commission to construct, improve, and maintain primary roads through cities of the fifth and sixth classes. Prior to 1928 the Highway Commission was authorized (Kentucky Statutes, 1922 Ed., Section 4356t-8) to enter into a contract with a city for the construction of a road through its limits and, if the road within the city limits was the same as outside of them, the cost was paid as in the case of other roads. No such contract was made in this case. In Shaver v. Rice, Mayor, 209 Ky. 467, 273 S. W. 48, it was contended by a number of property owners of the city of Greenville that the statutes authorizing the Highway Commission to build a primary road through a city had, by implication, repealed all statutory authority of cities to construct any of their streets that were a part of the primary system of state highways at the expense of abutting property owners. It was held, however, that the cities still had the power to construct streets at the expense of abutting property owners even though the street constructed might be a part of the primary system of highways. The assessments against abutting property were sustained and, so far as we are advised, the General Assembly has made no effort to reimburse the property owners or to pay the city of Greenville the amount of the outlay there involved. It is stated in briefs that two other cities have been thus reimbursed by the generosity of previous legislatures. If so, the acts were no less objectionable than the one before us

and their efficacy must rest on the failure to submit the question of their validity to the courts.

It appears from the preamble to Chapter 171 of the Acts of 1936 that the road through Grayson was constructed at the expense of the property owners. Yet the act provides simply for the payment to be made to the city. The city has been at no expense in the matter and "is a mere agency for collecting the assessments and custodian of the fund when the assessments are collected." Castle v. City of Louisa, 187 Ky. 397, 219 S. W. 439, 440. Conceivably, it intends to reimburse the property owners if it receives the money from the state, but whether so or not the Act is equally pernicious.

In Carr v. Jefferson County, 275 Ky. 685, 689, 122 S. W. (2d) 482, we had this same section of the Constitution before us in connection with an act of the General Assembly which undertook to authorize the bringing of a suit against Jefferson County, and we said (page 689, 122 S. W. (2d) page 484):

"The members of the General Assembly usually are deeply interested in what directly concerns their home counties and we can easily imagine a situation where some powerful group could form a bloc and prevent suits against their own counties, while on a similar, or identical, state of facts they might get through a resolution authorizing a suit against an adjacent or neighboring county. There could be a situation resulting from the joint negligence of the agents, servants, or employees of two counties and the General Assembly, by a joint resolution might authorize suit against one of the counties and not against the other, although it may be a joint tort feasor. It was this sort of legislation that Section 59 was designed to prohibit."

It is quite apparent that the Act before us is the same "sort of legislation" with all its attendant evils as was under consideration in that case. We take it that no exposition of the subject is necessary to demonstrate to those concerned the obvious fact that the Act is special legislation.

No legitimate reason suggests itself as to why taxes collected from the state at large should be devoted to the reimbursement of abutting property owners in one city rather than another in identically the same situation. As pointed out in Carr v. Jefferson County, supra, it

was this type of injustice with its temptation to "log-rolling" and raiding of the treasury for political gain, that led to the insertion of Section 59 in the Constitution, and of similar provisions in the Constitutions of other states. See article in 24 Kentucky Law Journal 351. The General Assembly can deal with the subject by a general law, so far as this section of the Constitution is concerned. How it may choose to do so is, of course, of no present importance. At all events it can not legislate in the manner here attempted. We conclude that Section 2 of Chapter 171 of the Acts of 1936 is invalid and furnishes no authority for this proceeding. The trial court should have sustained the demurrer to the petition. It is unnecessary to consider the other questions raised.

Judgment reversed.

Whole Court sitting.