Bert T. COMBS, Governor, Appellant,

v.

Robert F. MATTHEWS, Commissioner of Finance, et al., Appellees.

Court of Appeals of Kentucky.

Jan. 31, 1963.

Louis Cox, John Hopkins, Frankfort, for appellant.

**648** 

Hunter B. Whitesell, Dept. of Finance, John B. Browning, Asst. Atty. Gen., Robert T. Caldwell, Jr., Asst. Atty. Gen., Frankfort, Jack Q. Heath, Louisville, for appellees.

MILLIKEN, Judge.

 The General Assembly is meeting now in extraordinary session to consider reapportionment of legislative districts, a circumstance which came into existence after the trial court refused to declare the rights of the litigants, because it concluded that no justiciable controversy was presented by the pleadings which merely alleged that the Governor was "considering calling into extraordinary session the General Assembly * * * for the sole and express purpose of redistricting the said Commonwealth * * *." This Court is not authorized to give advisory opinions on hypothetical factual situations (Re Constitutionality of House Bill No. 222, 262 Ky. 437, 90 S.W.2d 692, 103 A.L.R. 1085. See, also, 47 H.L.R. 1022–9.), but it may declare the rights of litigants in advance of action when it concludes that a justiciable controversy is presented, the advance determination of which would eliminate or minimize the risk of wrong action by any of the parties. KRS 418.040, 418.045. Justiciability turns on "evaluating both the appropriateness of the issues for decision * * * and the hardship of denying judicial relief." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817. We believe the issues presented here should be resolved and that it will serve a useful public purpose to do so in advance of any legislative action of the General Assembly in the present special session. See Borchard, Declaratory Judgment, 2nd Ed., at pages 29 and 58.

The power of the Governor to call the General Assembly into session on extraordinary occasions for the sole purpose of considering stated subjects is conceded (Sec. 80, State Const.), but the Commissioner of Finance contends that the General Assembly may not consider legislative reapportionment or redistricting before 1964, claiming that Section 33 of the State Constitution requires such action at ten year intervals after 1894 when the first General Assembly met under the present Constitution. The Commissioner, consequently, pleads that he cannot legally approve the payroll and expenses of the members of the General Assembly for the present 1963 extraordinary session called, as it is, solely for the purpose of legislative redistricting.

The Governor asserts that "it is impossible to divide the Commonwealth into one hundred (100) representative districts of approximately equal population and at the same time to restrict each district to no more than two (2) counties," but the Secretary of State contends that Section 33 of the Constitution limits a representative district to a maximum of two counties which would preclude him from accepting the notification and declaration of candidates for the office of representative from districts containing more than two (2) counties. Section 33 of the Constitution says:

"The first General Assembly, after the adoption of this Constitution shall divide the state into thirty-eight Senatorial Districts, and one hundred Representative Districts, as nearly equal in population as may be without dividing any county, except where a county may include more than one district, which district shall constitute the Senatorial and Representative Districts for ten years. Not more than two counties shall be joined together to form a Representative District: Provided, In doing so the principle requiring every district to be as nearly equal in population as may be shall not be violated. At the expiration of that time, the General Assembly shall then, and every ten years thereafter, redistrict the State according to this rule, and for the purposes expressed in this section. If, in making said districts, inequality of population should be

unavoidable, any advantage resulting therefrom shall be given to districts having the largest territory. No part of a county shall be added to another county to make a district, and the counties forming a district shall be contiguous."

The political difficulty of achieving legislative reapportionment at ten year intervals as Section 33 commands is evidenced by the reluctance of the legislators through the years to tackle the job. Not since 1942 has it been accomplished or attempted in Kentucky. With the industrial development of the State, movement of its population to urban and industrial centers was assured, and inequality of representation in the General Assembly was inevitable unless periodic reapportionment was accomplished as commanded. The failure of Tennessee to reapportion its legislature since 1901 caused the Supreme Court, on March 26, 1962, to deviate from its historic policy of refraining from deciding so-called political questions on the ground they were non-justiciable and, in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, that Court concluded that a disparate inequality of representation in a state legislature presented "a justiciable constitutional cause of action * * * within the reach of judicial protection under the Fourteenth Amendment." (See The Non-Justiciable Controversy, 48 Va.L.R. 922 et seq., June, 1962.) As of November 1, 1962, the apportionment of at least thirty state legislatures has been challenged in State and/or Federal Courts. (Apportionment of State Legislatures, Advisory Commission on Intergovernmental Relations, Washington, D. C., December, 1962, at page A–21.)

■ In the light of this background it would be folly to construe Section 33 of our State Constitution in a manner that would delay the General Assembly in any way in attempting to meet its constitutional obligation of redistricting the State. The section requires the redistricting to be done every ten years. When it has not been undertaken for over twenty years, the emphasis clearly is on promptness in correcting any accumulated inequalities, for pervading the whole section is the "principle requiring every district to be as nearly equal in population as may be * * *."

■ Furthermore, we think this Court displayed rare foresight and sound judgment in 1906 when it said in Ragland v. Anderson, 125 Ky. 141, 100 S.W. 865:

"* * * we do not agree with appellees that section 33 forbids more than two counties to be joined in one district. Without elaboration, we are of opinion that more than two counties may be joined in one district, provided it be necessary in order to effectuate that equality of representation which the spirit of the whole section so imperatively demands. It may not be inappropriate, however, to say that it is difficult at this time to see how this necessity can often arise. But it must be remembered that Constitutions are established for the exigencies of long periods of time, and it cannot now be told what the future may bring forth."

Certainly, if the General Assembly enacts a redistricting plan which "effectuates that equality of representation" it will have done well a most difficult task and proved again that Kentuckians can govern themselves.

It is our conclusion that the General Assembly may enact a redistricting plan at its present session called for that specific purpose; that it may include more than two (2) counties in a representative district if it deems that it is necessary in order to effect a reasonable equality of representation among respective districts; and that it is entitled to compensation for its services and payment of its lawful expenses.

The judgment is reversed with directions to enter judgment in conformity herewith.

MONTGOMERY, J., not sitting.